PATRICK D. ROBBINS (CABN 152288)
First Assistant United States Attorney
(Attorney for the United States, Acting under Authority Conferred by 28 U.S.C. § 515)

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

JONATHAN U. LEE (CABN 148792)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Facsimile: (415) 436-7027
    jonathan.lee@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| UNITED STATES OF AMERICA, | ) | CASE NO. CR 20-317-JSW-2 |
|---|---|---|
| Plaintiff, | ) | |
| | ) | **UNITED STATES'** |
| v. | ) | **SENTENCING MEMORANDUM** |
| | ) | |
| JOSE OCHOA, | ) | Date:   July 25, 2023 |
| Defendant. | ) | Time:   1:00 p.m. |
| | ) | Before: Hon. Jeffrey S. White |

SENTENCING MEMORANDUM
CR 20-317-JSW-2

## I. INTRODUCTION

Defendant Jose Ochoa will appear before this Court on July 25, 2023, for sentencing for conspiring to distribute controlled substances, in his case 26.8 grams of methamphetamine, 431.51 grams of heroin, 160.936 grams of methamphetamine, 2,580.754 grams of cocaine, and 994 fentanyl pills. Mr. Ochoa possessed controlled substances and two firearms in his residence, including a loaded revolver in his bedroom and an AR15 style firearm defendant kept hidden in his sister's bedroom. He was identified as a source of controlled substances by other members of the conspiracy. While on probation, he left the United States for Mexico and later Colombia, until his arrest and return to this country more than two years later. Balancing the offense conduct against the defendant's criminal history, the government recommends a term of 78 months imprisonment followed by four years of supervised release. The government submits that this sentence is sufficient but not greater than necessary to meet the goals of sentencing.

## II. FACTUAL BACKGROUND

### A. Defendant's Offense Conduct in Transactions

In 2019 and 2020, the government investigated the activities of the South Side Locos (SSL), a subset of the Sureños criminal street gang that operates in and around Concord, California. Mr. Ochoa's involvement in the charged conduct was significant.

First, Ochoa was a source of controlled substances. For example, on May 9, 2019, two CIs met with Ochoa's co-defendant Ramirez-Carranza outside of his residence in Concord, after coordinating the purchase of methamphetamine and a firearm on Snapchat. When the CIs arrived, they saw Ramirez-Carranza exit a blue Ram pickup truck, which was registered to Ochoa. Ochoa was sitting in the driver seat of the truck, and co-defendant Cruz was sitting in the rear passenger seat. Ramirez-Carranza then grabbed a firearm from a Honda sedan parked in his driveway before getting into the CI vehicle. Ramirez-Carranza then gave a P80 handgun and 27.4 grams methamphetamine (net) to the CIs for $1,000 and $300, respectively. During the transaction, Ramirez-Carranza told the CIs that he could get them fully automatic assault rifles and additional methamphetamine, and that his "boy" was nearby while pointing to the blue pickup truck. The CI recognized the driver of the blue pickup truck as an SSL gang member known as "Diver." Later, when agents showed the CI a photo of Mr. Ochoa, the CI

identified the person in the photograph to be "Diver." After the transaction, Ramirez-Carranza got back into Ochoa's truck. At a transaction on May 15, 2020, when another co-defendant Magana met with a CI to ask for payment for helping coordinate drug and gun sales, Magana told the CI that they used to get "roxy" (fentanyl) from "Diver" (i.e. Ochoa) before he got arrested. Magana further noted that Diver fled to Mexico because "they caught him with a kilo."

### B.     Defendant's Offense Conduct Connected to the Search of His Residence

A search of Ochoa's residence in June 2019 yielded large cache of drugs and other evidence of his armed drug trafficking. Officers found multiple bricks of cocaine, large quantities of heroin, methamphetamine, and fentanyl pills. The following drug quantities were seized:

| Drug | Location Recovered | Net Weight |
| --- | --- | --- |
| Heroin | White plastic bag inside cardboard box | 431.51 grams |
| Methamphetamine | Plastic bag | 134.30 grams |
| Methamphetamine | Plastic bag | 7.244 grams |
| Methamphetamine | Plastic bag | 19.392 grams |
| Cocaine Salt | 7 plastic bags | 187.035 grams |
| Cocaine Salt | Plastic bag | 390.10 grams |
| Cocaine Salt | Plastic bag (brick) | 1,0003.85 grams |
| Cocaine Salt | Plastic bag (brick) | 998.04 grams |
| Cocaine Salt | Plastic bag | 1.729 grams |
| Fentanyl | White plastic bag inside cardboard box | 994 pills |
| **Aggregate Quantities** | | |
| Heroin | 431.51 grams | |
| Methamphetamine | 160.936 grams | |
| Cocaine Salt | 2580.754 grams | |
| Fentanyl | 994 pills (est. 29.82 grams) | |

In the bedroom Ochoa stated he used with his wife and child, officers located a plastic box on the floor in which there was cocaine and methamphetamine, as well as three digital scales, a box of plastic sandwich bags, and packaging material. PSR ¶¶ 34-39. In a nearby white cardboard box, officers found heroin and fentanyl pills. In a dresser containing all male clothing, also in this same bedroom, officers found two heat sealed bricks packaged in plastic, with writing on the outside, which officers later identified as individually wrapped kilograms of narcotics. In another dresser drawer, officers located a fully loaded Ruger Security 6 .357 magnum blue revolver with six Hornaday .357 magnum bullets. Officers also found a binder with names and amounts of money listed in it, U.S. currency, Ochoa's wallet, another digital scale, an electronic money counter, and other indicia with Ochoa's name on it.

SENTENCING MEMORANDUM
CR 20-317-JSW-2                                            3

Officers found controlled substances packaged for sale in diverse places, including stashed among children's clothing and in multiple rooms. Officers asked Ochoa if there were any other firearms in the residence, and Ochoa informed them that he had an assault rifle hidden in his sister's closet. Officers checked the closet and found a duffle bag with male clothing, and under the clothing was an AR15 style pistol grip assault rifle with a round in the magazine, which officers determined was fully functional. A photo of what was recovered in this search is below:

### III.   PENALTIES

#### A.   Statutory Penalty Ranges

Ochoa faces multiple counts: (1) 21 U.S.C. §§ 846 and 841 (a)(1), (b)(1)(B)(viii) and (b)(1)(C)- Conspiracy to Distribute and Possess with Intent to Distribute Heroin, Cocaine, and Methamphetamine (Count One); (2) 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii) – Possession with Intent to Distribute Cocaine (Count Two); (3) 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(i) – Possession with Intent to Distribute Heroin (Count Three); (4) 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii) – Possession with Intent to Distribute Methamphetamine (Count Four); (5) 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) – Possession with Intent to Distribute Fentanyl (Count Five); (6) 18 U.S.C. § 924(c)(1)(A)(i) – Possession of a Firearm in Furtherance of a Drug Trafficking Crime (Count Six); and (7) 18 U.S.C. § 922(g)(1) – Felon in

Possession of a Firearm and Ammunition (Count Seven).

The count of conviction is Count One, Conspiracy to Distribute Cocaine, Heroin, and Methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B)(viii), and 841(b)(1)(C). The maximum penalties for this offense are (a) a minimum term of imprisonment of 5 years, and a maximum prison term of 40 years; (b) a maximum fine of $5,000,000; (c) a maximum supervised release term of life, a minimum supervised release term of 4 years; (d) a mandatory special assessment of $100; (e) forfeiture; and (f) mandatory and discretionary denial of federal benefits upon conviction of drug offenses, 21 U.S.C. § 862 and § 862a. The remaining counts will be dismissed at sentencing.

### B.     Guidelines Range

The parties' plea agreement calculated the guidelines level as 27 after acceptance. The Probation Officer calculates the guidelines level after acceptance as 29. PSR ¶ 71. The U.S. Probation Officer has calculated the defendant's Criminal History Category (CHC) as II. *Id*. 76. The guidelines imprisonment range for the parties' agreed offense level 27 and CHC II is 78-97 months.

## IV.    LEGAL STANDARD

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the sentencing purposes identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Sentencing Guidelines are "the 'starting point and the initial benchmark,'" *United States v. Kimbrough*, 552 U.S. 85, 108 (2007) (quoting *United States v. Gall*, 552 U.S. 38, 49 (2007)), and are to be kept in mind throughout the process. *See Gall*, 552 U.S. at 50, n. 6. After determining the appropriate Guidelines calculations, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991-93.

## V.     SENTENCING RECOMMENDATION

Taking the Section 3553 factors into account, a sentence of 78 months imprisonment is sufficient but not greater than necessary to achieve the goals of sentencing.

### A.     The nature and circumstances of the offense justify the recommended sentence.

Mr. Ochoa's offense conduct was very serious. He was identified as one of the leaders of the SSL clique of Sureńos. At a documented controlled transaction, Ochoa appeared to be in control of the co-conspirators' actions. One defendant, Ramirez-Carranza, exited Ochoa's pickup truck, retrieved a

handgun from another nearby vehicle, and approached the CIs to complete the transaction, a sale of both methamphetamine and the handgun.  On another occasion, another defendant, Magana, stated that Ochoa was the source of the methamphetamine sold in several transactions and he was a source for other substances including fentanyl.  During a subsequent search of Ochoa's residence, law enforcement recovered large quantities of cocaine, methamphetamine, and heroin, as well as scales and other indicia of someone who was running a drug trafficking operation.  They also two recovered firearms.  Out of all defendants in this case, Ochoa possessed greater distributable quantities of controlled substances.

There is no dispute that illicit sales of controlled substances and firearms is serious conduct.  Firearms pose a well-known threat of violence, especially when sold by unlicensed sellers who sidestep the background check and registration requirements.  *See, e.g.*, *United States v. Torres*, 911 F.3d 1253, 1264 (9th Cir. 2019) (Congress passed Section 922(g) to "disarm groups whose members Congress believes are unable or unwilling to conduct themselves in conformity with the responsibilities of citizenship"); *United States v. Daychild*, 357 F.3d 1082, 1100 (9th Cir. 2004) ("danger posed to the public by armed conspirators who traffic in illicit drugs is too plain to permit dispute.").  For example, distributing methamphetamine has lethal consequences for users and communities; according to the National Institute on Drug Abuse, methamphetamine is the controlled substance that "most contributes to violent crime."  Nat'l Inst. on Drug Abuse, "Methamphetamine Abuse and Addiction," Nat'l Inst. of Heath Pub. 13-4210 (2013, rev. 2019, 2021) at 1.[1]

Here, as in *Torres* and *Daychild*, Ochoa trafficked deadly controlled substances and was armed.  The recommended sentence addresses the seriousness of the defendant's offense conduct.

B. **The defendant's history and characteristics support the recommended sentence.**

Mr. Ochoa's personal history and characteristics support the recommended sentence.  Ochoa's criminal history includes multiple arrests with Sureńos in Sureńos' territory or committing offenses in furtherance of his gang status, since approximately 2014.  Ochoa sustained a felony conviction in 2016 for accessory after the fact (Penal Code 32) for concealing or assisting another individual who fired a gun at an occupied vehicle.  He received a sentence of 60 days and was on probation at the time of this

---

[1] This report is available at https://www.drugabuse.gov/publications/research-reports/methamphetamine/letter-director, and the tabs associated with it (last accessed July 17, 2023).

SENTENCING MEMORANDUM
CR 20-317-JSW-2                                                 6

offense conduct and when he fled to Mexico in 2019. The government contends that one of the reasons Ochoa fled was the publicity surrounding new leads into the 2015 murder of Eric Cruz released by the state authorities in 2019.

On September 14, 2020, Contra Costa County charged Ochoa and five others with the gang-motivated killing of Eric Cruz in September 2015. *See* PSR ¶¶ 78-84. The complaint alleges that Ochoa and the other defendants conspired to lure Cruz to the Pine Meadows apartment complex in Concord, California, where they shot and killed him in order to take possession of a 357 revolver and cash from Cruz's body. The complaint further alleges that a 44 caliber handgun registered to Ochoa fired the fatal shot that killed Cruz. PSR ¶ 82.

From his role in a 2015 murder to his conviction for assisting another individual who fired a gun at an occupied vehicle to his decision to leave the United States while still on probation, Ochoa's offense conduct as an armed drug trafficker is part of a pattern of his conduct and history that is very serious.

### C. The recommended sentence addresses the danger to the community.

Moreover, Mr. Ochoa is a danger to the community. During the conspiracy, Ochoa distributed controlled substances and also supplied other Sureńos with controlled substances to distribute. He and his co-conspirators focused their activity on the Monument Corridor, where a vulnerable population made up of immigrants or first-generation Americans are both subject to Sureńo recruiting efforts and unlikely to offer much resistance to Sureńo trafficking activities or report it to authorities. As noted, Ochoa faces a state murder charge, and he evaded authorities for over two years while in Mexico and Colombia, both of which are aspects of his dangerousness.

This conduct harmed the community, and the defendant knew it. Methamphetamine sales exploit the vulnerabilities of potential customers to its highly addictive and destructive impacts. Illicit firearms sales promote violent conduct, as customers of such sales are as a general matter unable to purchase firearms in legitimate transactions.

This defendant engaged in his offense conduct in the midst of the community, both in residential settings such as his co-defendants' residences in Concord. These settings were near other residents, schools, shopping areas, and parks. Defendant's conduct increased the risk of harm in Concord, a community already struggling with violent crime. According to the FBI's 2016 crime data, Concord

ranked 82nd in the top 100 municipalities in California for violent crime, along with three other Contra Costa County communities – Antioch, Pittsburg and Richmond, which ranked 20th, 59th, and 6th, respectively.  The FBI reported 447 violent crimes in 2016 in Concord, a city of 129,000, a rate of 1 violent crime per 290 Concord residents.

    Defendant also possessed large quantities of controlled substances and firearms in his family's residence in Bay Point, California, putting family members, neighbors, and others in the community in close proximity to the dangers posed by armed drug trafficking.

### D. The recommended sentence promotes respect for the law.

    Mr. Ochoa's conduct demonstrates his lack of respect for the law, which also supports the recommended sentence.  First, Ochoa's past conduct demonstrates his lack of respect for the law, including supervision by the courts.  In 2019, Ochoa was under a sentence of probation in Contra Costa County.  But his probation status did not prevent him from being present at the recorded transaction in May 2019 involving the sale of a firearm and methamphetamine.  Moreover, Ochoa's probation sentence did little to curb his armed drug dealing, as evidenced by the June 2019 search of his home.  Simply put, Ochoa's lack of respect for the conditions of his probation during 2019, when he was in his community in Concord, demonstrate his lack of respect for the law.  Moreover, Ochoa's flight further demonstrates this point.  Concord PD's investigation of the September 2015 murder case of Eric Cruz developed new information in the summer of 2019.  Law enforcement published new sketches of the suspected murderers and requested the public's assistance in identifying them.  Fearing his apprehension for that murder, the government contends, Ochoa fled to Mexico.  Ochoa remained in Mexico, beyond the reach of his state probation sentence or this court, for years.

    Additionally, Ochoa and his co-conspirators conducted their trafficking activities largely in the 1500 Monument Boulevard shopping center and surrounding residential neighborhoods.  They were often brazen about what they did, selling methamphetamine and/or firearms in daylight while merchants tried to conduct legitimate business, families and other shoppers walked nearby, school-aged children came from a nearby elementary school to purchase a snack, and the like.  Ochoa, in particular, showed a lack of respect for the law by providing leadership to the conspirators and supplying them with necessary quantities of methamphetamine and the other substances, while on probation.  These multiple

aspects of Ochoa's conduct demonstrate his lack of respect for the rule of law, including those laws regulating business operations and differentiating between legal and illicit commerce, those that protect the welfare of minors and provide for their education, and the rules of his supervision that controlled his day-to-day activities and movement.

### E. The recommended sentence will advance the sentencing goal of deterrence.

Each co-defendant has pled guilty, and only Ochoa has not yet been sentenced. Ochoa is responsible for more distributable controlled substances than any other defendant. He possessed firearms and indicia of a drug trafficker including pay/owe sheets and digital scales. His sentence should reflect general and specific deterrence based on his conduct alone. However, here, there is the additional issue of defendant's flight. His case is the last to reach sentencing because he was in Mexico for over two years, from 2019 to September 2022, when he did not have permission to flee. Moreover, Ochoa is responsible for more distributable controlled substance than any other defendant.

A sentence of 78 months imprisonment is thus a just punishment for this defendant, will promote respect for the law, and will deter both Mr. Ochoa and others from peddling in destructive substances like methamphetamine, cocaine, heroin, and fentanyl. The recommended sentence will further provide an important message to the defendant and other potential wrongdoers that controlled substance distribution in this community will not be tolerated by the Court. The government requests that the Court impose the recommended sentence to deter this defendant and any other potential wrongdoer from distributing methamphetamine, heroin, cocaine, fentanyl, and from possessing firearms.

## VI. CONCLUSION

The government requests that the Court impose the recommended sentence of 78 months imprisonment, followed by a four-year term of supervised release, and a $100 special assessment.

DATED: July 18, 2023

Respectfully submitted,

PATRICK D. ROBBINS
First Assistant United States Attorney (Attorney for the United States, Acting under Authority Conferred by 28 U.S.C. § 515)

  /s/
JONATHAN U. LEE
Assistant United States Attorney

SENTENCING MEMORANDUM
CR 20-317-JSW-2                             9